Argued and submitted March 28,
reversed April 28, reconsideration denied June 5,
petition for review denied September 3, 1980 (289 Or 588)

# DAMASCUS COMMUNITY CHURCH,
## *Respondent,*
### *v.*
# CLACKAMAS COUNTY,
## *Appellant.*

## (No. 78-10-182, CA 15205)

610 P2d 273

Beth Blount, Assistant County Counsel, Oregon City, argued the cause for appellant. With her on the briefs was John E. Schwab, Clackamas County Counsel, Oregon City.

B. Rupert Koblegarde, Portland, argued the cause for respondent. With him on the brief were Andrew J. Gerlicher and Richard L. Lonergan, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

In 1967, the defendant county issued a conditional use permit to the plaintiff in this declaratory judgment proceeding, authorizing plaintiff to construct and operate a church in an RA-1 (Rural (Agricultural) Single Family Residential) zone. In 1975, the county became aware that plaintiff was operating a full-time parochial school on the church premises. The county planning director notified plaintiff that the school operation was a violation of the Clackamas County zoning ordinance and demanded that the school use be discontinued. Thereafter, plaintiff applied for a conditional use permit to operate the school, and the application was denied by the county. The county's denial was affirmed by the circuit court and by this court. *Damascus Comm. Church v. Clackamas Co.,* 32 Or App 3, 573 P2d 726, *rev den* 283 Or 99 (1978).

The county then brought suit to enjoin the operation of the school. Plaintiff, in turn, brought this declaratory judgment suit, seeking, first, a declaration that the 1967 conditional use permit for the church was "sufficient to encompass its school operation"; second, a declaration that, if the zoning ordinance prohibits the operation of the school, the ordinance as applied to plaintiff violates plaintiff's right to the free exercise of religion under the United States and Oregon Constitutions; and, third, an injunction against the county's enforcement of the ordinance against plaintiff. The trial court concluded that the school

> "is an integral and inseparable part of the * * * Church and * * * that [Plaintiff's] original and current conditional use permit is sufficient to encompass its school operation."

The county appeals, and we reverse.[1]

---

[1] Although plaintiff's declaratory judgment suit and the county's injunction suit were consolidated for trial, the court's judgment order appears to decide only the plaintiff's suit. We therefore do not consider the injunction suit or the relief the county sought through it in this appeal.

The relevant portions of the Clackamas County Zoning Ordinance provide:

## "CONDITIONAL USES

### "8.1 GENERAL PROVISIONS

"A.....The following conditional uses, because of their public convenience and necessity and their effect upon the neighborhood shall be permitted only upon the approval of the Hearings Officer after due notice and public hearing, * * * and a finding that such conditional use will not be detrimental to the general comprehensive plan and surrounding property.

"B.....Permits for conditional uses shall stipulate restrictions or conditions which may include a definite time limit, provisions for a front, side or rear yard greater than the minimum dimensional standards of the Zoning Ordinance, suitable landscaping, off-street parking, and any other reasonable restriction, condition, or safeguard that would uphold the spirit and intent of the Zoning Ordinance, and mitigate any adverse effect upon the neighborhood properties by reason of the use, extension, construction or alteration allowed.

"C.....Any conditional use shall meet the dimensional standards of the Zone in which it is to be located, as well as the minimum conditions listed below.

"* * * * *

### "8.4 CHURCHES

"A.....District Permitted: Residential, Multi-Family, Agricultural, and Commercial Districts.

"B.....Conditional Standards.

"* * * * *

"C.....Off-street Parking: As provided in Section 7.1.

"* * * * *

### "8.8 SCHOOLS: PAROCHIAL AND PRIVATE

"A.....District Permitted: Agricultural, Residential, and Multi-Family Districts.

"B.....Dimensional Standards:

"* * * * *

[1068]

"C.....Off-Street Parking: As required in Section 7.1.

"D.....Off-Street Loading and Unloading Area for Buses: As required in Section 7.2.
"* * * * *

"8.12 *PUBLIC SCHOOLS: PRIVATE AND PAROCHIAL SCHOOLS OFFERING CURRICULA SIMILAR TO PUBLIC SCHOOLS.*

"A.....District Permitted: Single-family Residential, Agricultural, and the MR-1 Multi-Family District.

"B.....Dimensional Standards:
"* * * * *

"C.....Off-Street Parking: As required in Section 7.1.

"D.....Off-Street Loading and Unloading Area for Buses: As required in Section 7.2."

The issues in this case are, first, whether plaintiff's 1967 conditional use permit for the operation of the church also authorizes the operation of the parochial school; and, second, whether the zoning ordinance denies plaintiff's constitutional right to the free exercise of religion if the permit does not authorize the operation of the school.[2]

On the first issue, plaintiff relies on textual authority and on decisions from other jurisdictions holding that terms such as "church" and "religious use" in

---

[2] The parties also raise the issue of whether the declaratory judgment proceeding was at law or in equity. Plaintiff argues that this was a legal proceeding, and that this court therefore cannot disturb the trial court's "factual determination that the school is an integral and inseparable part of the church," which plaintiff argues was supported by substantial evidence. Whatever our scope of review, we agree with the trial court's finding — if such it was — that the precepts of plaintiff and its members require education for children to be conducted in a nonsecular setting under the auspices of plaintiff. However, we do not agree that that fact, in itself, is determinative of whether, *under the ordinance,* a conditional use permit for the operation of a church automatically carries with it authority to operate a parochial school. Because we consider the relevant question to be the meaning of the ordinance — a question of law — it is immaterial whether our review of factual questions is for substantial evidence or de novo. *Cf. Anderson v. Peden,* 284 Or 313, 315, 587 P2d 59 (1978).

zoning ordinances implicitly include uses — in addition to worship and activities directly related to worship — which are ancillary or related to the religious purposes of the entity conducting the "church" or "religious use." *See* 2 Anderson, American Law of Zoning 2d, § 12.25 (1976); and Annotation, 62 ALR3d 197 (1975) (summarizing cases in which various uses have been held to be or not to be within the scope of such terms as "church," "religious use" and the' like.) The principal case on which plaintiff relies, and the case which the trial judge in his letter opinion cited as the principal support for his decision, is *City of Concord v. New Testament Baptist Church,* 118 NH 56, 382 A2d 377 (1978). There, the New Hampshire Supreme Court concluded that a parochial school was a facility "usually connected with a church," and was therefore a permitted use under a city ordinance authorizing the operation of churches and "facilities usually connected with a church" in the area in question. The court stated:

> "* * * The question of what facilties are 'usually' connected or associated with a church could be considered from the viewpoint of the specific church, of churches generally, or of the city. The problem with the latter view is that it involves governmental determination of propriety in religious matters and thus could infringe on the free exercise of religion * * *." 118 NH at 58, 382 A2d at 379.

The court then summarily reviewed the historical background of religious educational facilities in New England and in Pennsylvania, and concluded:

> "* * * While every church may not 'usually' have a full-time school associated with it, we hold that the Heritage Christian School is a proper permitted use connected with, and is a part of, the New Testament Baptist Church." 118 NH at 60, 382 A2d at 380.

The *City of Concord* case is not analogous to the present one. Unlike the ordinance considered by the New Hampshire court, the county's ordinance here does not refer to "facilities usually connected with a

church." It may be that *certain types* of ancillary uses "usually connected with a church" *are implicitly* encompassed by conditional use permits for churches issued under the county ordinance, notwithstanding the absence of language in the ordinance so providing. However, we need not decide that question here, because it is clear that full-time parochial schools are *not* among the uses which could be regarded as implicit in a conditional use permit for a church under this ordinance. The section of the ordinance governing conditional uses treats churches under one subsection and parochial and private schools under other subsections. The minimum conditions for the church use and for the school use differ. Thus, the ordinance clearly manifests the county's legislative decision to make the granting of and criteria for conditional use permits for churches and for parochial schools different and independent. We accordingly conclude that, under the ordinance, a conditional use permit for a church does not automatically authorize the operation of a full-time parochial school.[3]

In addition to the fact that the county zoning ordinance differs in relevant respects from the ordinance

---

[3] Plaintiff also argues that the conditional use permit application filed by it in 1967 included a notation describing the proposed structures as "frame church and educational units." Plaintiff's apparent point is that, whether or not a school use is necessarily part of a conditional church use under the terms of the ordinance, the county *in fact* approved the school use as well as the church use by approving an application which contained the notation with the words "educational units." However, that notation did not appear on all copies of the application. The notation was in a different handwriting from that on the remainder of the application, and the copies were made with attached carbon sheets. The record does not answer whether the copy of the application which was forwarded to the planning commission contained the notation, nor did the trial court make a finding on the question. We note, however, that the copy on which planning commission approval is endorsed does not contain the notation. In any event, even had the notation appeared on the copy which was forwarded to the planning commission, that would not support plaintiff's thesis that the commission therefore intended to approve a parochial school use. The county concedes that the use of the church building for the conduct of Sunday School classes, as distinguished from the daily parochial school use, is within the scope of the conditional use permit for the church. The words "educational units" therefore do not *necessarily* imply a *parochial* school use.

considered in *City of Concord,* we also find *City of Concord* and the other authority upon which plaintiff relies to be unpersuasive for another reason. The court in *City of Concord* took the view that the determination of what constitutes a connected or usual church use was inherently flexible and was to be made case by case on the basis of the religious tenets of the particular entity operating the church. The New Hampshire court also suggested — and plaintiff argues here — that constitutional and other values would be impaired if public authorities were able to define the parameters of religious activity. The ordinance in the New Hampshire case required that kind of determination; the ordinance involved here does not. For that reason, the thesis, inherent in the New Hampshire court's comments, that the definition of a church or religious use in a zoning ordinance is presumptively a regulation of religious activity rather than a regulation of the use of land, is inapplicable here.

For essentially the reasons expressed in the preceding paragraph, we reject plaintiff's argument that the ordinance interferes with its right to the free exercise of religion. We stated in *Christian Retreat Center v. Comm. for Wash. Co.,* 28 Or App 673, 560 P2d 1100, *rev den* (1977):

"* * * In *Jehovah's Witnesses v. Mullen et al,* 214 Or 281, 330 P2d 5, 74 ALR2d 347 (1958), *appeal dismissed* 359 US 436 (1959), the city council of the city of Milwaukie relied upon a substantially similar provision of its zoning ordinance in denying an application for a 'special use' — i.e., conditional use — permit to construct a church in a primarily single-family residential zone where it had determined that the use of the land involved as the site for a church would result in a level of 'traffic congestion' which would be incompatible with the nature of the surrounding area. In upholding that decision against the charge that it constituted a denial of the freedom of religion guaranteed by the First and Fourteenth Amendments to the United States Constitution and Art I, § 2 of the Oregon Constitution, the court

pointed out the distinction between the infringement upon religious *beliefs,* which is absolutely prohibited, and the permissible imposition of reasonable limitations, designed to protect the public health or welfare, upon religious *practices.* (Footnote omitted.) Like the ordinance upheld in *Jehovah's Witnesses,* those provisions of the Washington County Community Development Ordinance which in effect authorize the denial of a "church and accessory use" permit where the granting of the application would not best serve the 'probable need of the public' represent a reasonable limitation upon religious practices; the board did not, therefore, 'misconstrue the applicable law' when it concluded that the ordinance did not, by authorizing the denial of plaintiff's application, constitute an unreasonable restraint upon the freedom of religion." 28 Or App at 680-81. (Emphasis in original.)

The county ordinance is clearly intended as land use regulation, and it permits both churches and parochial schools, but not necessarily on the same site if the requirements are not met. There is no contention that the county, as a matter of practice, has not permitted parochial schools or has discriminated in favor of, or against, any school sponsored by any particular sect. A full-time school is a more intensive use than a church, and there is no constitutional prohibition against the county's adopting different requirements for the two uses.

Reversed.